

1  RALPH B. KALFAYAN (SBN 133464)
   DAVID B. ZLOTNICK (SBN 195607)
2  DAVID M. WATSON (SBN 219705)
   KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP
3  625 Broadway, Suite 635
   San Diego, CA  92101
4  Telephone:   (619) 232-0331
   Facsimile:    (619) 232-4019
5
   DAN DRACHLER
6  ZWERLING, SCHACHTER & ZWERLING, LLP
   1904 Third Avenue, Suite 1030
7  Seattle, WA  98101
   Telephone:   (206) 223-2053
8  Facsimile:    (206) 343-9636

9  ALI OROMCHIAN (SBN: 224265)
   2603 Camino Ramon, Suite 200
10 San Ramon, California 94583
   Telephone:   (925) 242-2511
11 Facsimile:    (925) 884-1725

12 Attorneys for Plaintiff

13
   Attorneys for Plaintiff WIDE WORLD TOURS OF MISSION VALLEY, INC.
14 And the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WIDE WORLD TOURS OF MISSION VALLEY, INC., a California corporation, on behalf of itself and all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>KOREAN AIR LINES CO., LTD.,<br><br>             Defendant. | Case No. CV 07 5837<br><br>**CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |

- 1 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Wide World Tours of Mission Valley, Inc., a California corporation, ("Wide World") on behalf of itself and all others similarly situated for treble damages and injunctive relief pursuant to Section 1 of the Sherman Antitrust Act of 1890 ("Sherman Act"), 15 U.S.C. §1, and Sections 4 and 16 of the Clayton Antitrust Act of 1914 ("Clayton Act") brings this action against Korean Air Lines, Co., Ltd. ("Korean Air"), upon personal knowledge as to matters relating to itself and to information obtained during the course of its attorneys' investigation and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.     This action arises from Defendant and its co-conspirators unlawful conspiracy to restrain and eliminate competition by fixing wholesale and passenger ticket prices charged for flights from various destinations in the United States ("U.S.") to the Republic of Korea ("Korea") during the period from January 1, 2000 until at least July 16, 2006 ("Class Period").

2.     The Defendant and its co-conspirators deliberately entered into various agreements, understandings and arrangements, with the deliberate intent to suppress and eliminate competition by fixing wholesale and passenger ticket prices. Defendant and its co-conspirators, through their employees and agents, were direct participants in this unlawful conduct to collude to fix, raise, maintain or stabilize prices for passenger flights between the U.S. and Korea.

3.     Upon information and belief, Defendant and its co-conspirators were in regular and virtually continuous contact with one another, including regular meetings, conversations and communications with respect to the retail and/or wholesale prices of passenger flights from the U.S. to Korea. During these ongoing communications, Defendant and its co-conspirators, colluded and agreed to fix the retail price of flights and the wholesale price on category "H" tickets that were primarily intended for the Korean travel market, and took steps to implement the agreed upon artificial prices between the Defendant and its co-conspirators. Moreover, Defendant took various steps to monitor and enforce the adherence of the colluded ticket prices by its co-conspirators to ensure compliance by all co-conspirators.

4.     On or about August 1, 2007, the U.S. Department of Justice ("DOJ") announced

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

that Korean Air pleaded guilty to charges of price fixing relating to fuel surcharges on long-haul passenger and cargo flights.[1] In announcing that the carrier would pay a $300 million fine, the DOJ noted that during the time of the passenger conspiracy (from 2000 through at least July 16, 2006), Korean Air also agreed with air cargo competitors on rates charged to customers in the U.S. and elsewhere for international air cargo shipments. The DOJ also indicated that the conspirators agreed to increase the fuel surcharge over time from 10 cents per kilogram to as high as 60 cents for each kilogram of cargo shipped from the U.S.

## JURISDICTION AND VENUE

5.   Plaintiff's Complaint alleges violations of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees.

6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

7.   This court has personal jurisdiction over Defendant because it systematically and continually conducts business in the United States, including advertising, marketing and sales directed to residents here.

8.   Venue is proper in this District under §§ 15, 22, and 26, and 28 U.S.C. § 1391 because Defendant resides, transacts business, or is found within this district.

## THE PARTIES

9.   Plaintiff Wide World is a California corporation with its principal place of business in San Diego, CA. During the Class Period, Plaintiff purchased passenger airline tickets from Korean Air for travel between the U.S. and Korea. As a result of Defendant's and

---

[1] The DOJ also announced that United Kingdom ("U.K.") based British Airways plead guilty to a $300 million fine. The DOJ noted that during the time of the passenger conspiracy (2004-2006) the fuel surcharge for a round trip passenger ticket from the U.S. to the U.K. increased from $10 to $110. British Airways was also involved in the price fixing of cargo flights. During the time of the cargo conspiracy (2002-2006) the fuel surcharge on shipments increased by 20-fold. On the same day, the UK Office of Fair Trading announced that it would fine British Airways $246 million as a result of a similar investigation into passenger fuel surcharges.

1  its co-conspirators' unlawful conduct alleged herein, Plaintiff has suffered injury in fact and paid
2  artificially inflated prices for air travel between the U.S. and Korea.
3     10.   Defendant Korean Air is an entity organized and existing under the laws of Korea
4  and its principal place of business is in Seoul, Korea. During the Class Period, Defendant
5  Korean Air provided international air transportation services to passengers and travel agents for
6  travel between the U.S. and Korea, and elsewhere, including to passengers and travel agents in
7  this District.

## UNNAMED CO-CONSPIRATORS

9     11.   On information and belief, other air passenger carriers are co-conspirators with
10 Defendant in their unlawful restraint of trade. These other co-conspirators have facilitated,
11 adhered to, participated in, and/or communicated with others regarding the conspiracy.

## SUBSTANTIVE ALLEGATIONS

13 A.   Relevant Background
14    12.   Defendant Korean Air is the national flag carrier airline of the Republic of Korea,
15 with its global headquarters located in Seoul, Korea. Its international passenger division and
16 related subsidiary cargo division together serve 130 cities in 45 countries, while its domestic
17 division serves 20 destinations. It is the largest passenger carrier from the U.S. to Korea and
18 averages approximately $250 million a year in revenue from those flights.
19    13.   In the late 1990s, an economic recession in South Korea forced Defendant Korean
20 Air to reduce its total number of flights and eliminate many destinations. However, the Korean
21 economy recovered in 2000 which allowed Defendant Korean Air to expand its global
22 destination network by increasing its international gateways from its worldwide super hub in
23 Korea.
24    14.   Today, Defendant Korean Air flies to the most U.S. gateway destinations of any
25 Asian carrier (16 passenger cities in the 50 states).
26    15.   In the U.S., Defendant Korean Air sells its passenger airline tickets directly to
27 passengers and also directly to travel agents who then sell the tickets to passengers.

16. When Defendant and its co-conspirators sold airline tickets directly to passengers, Defendant and its co-conspirators sold the tickets at a published or advertised rate. The published rate included both a base fare, and at times during the Class Period, a fuel surcharge.

17. Defendant and its co-conspirators sold "H" class passenger airline tickets directly to travel agents who resold the passenger tickets in the Korean ethnic travel market. The travel agents who bought "H" class passenger tickets from Defendants for resale in the Korean ethnic travel market paid a discounted published fare, or wholesale fare, for those tickets.

B.**European and U.S. Antitrust Authorities Begin Investigation into Price Fixing**

18. On or about February 14, 2006, the European Commission ("EU"), the DOJ and the Federal Bureau of Investigation ("FBI") either raided or issued subpoenas to more than a dozen airlines[2] including Defendant Korean Air.

19. On February 17, 2006, Defendant Korean Air confirmed that it was inspected amid a probe into alleged collusion to fix prices in the airline industry.

20. On August 1, 2007, Defendant Korean Air admitted its illegal activities, plead guilty to colluding with co-conspirators to fix the price of passenger airline tickets, and agreed to pay $300 million in fines.

C. **Defendant Conspired to Illegally Suppress and Fix the Price of Airline Tickets.**

21. Beginning on or about January 1, 2000, and continuing through at least July 31, 2006, Defendant and its co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the price charged for passenger airline tickets for flights between the U.S. and Korea.

22. In furtherance of their international conspiracy, Defendants did the following:

    a. Participated in meetings, conversations and communications in the U.S. and elsewhere to discuss one or both components of the passenger air fares

---

[2] They included, but are not limited to, Singapore Airlines Ltd., Japan Airlines Corp., Hong Kong's Cathay Pacific Airways Ltd., British Airways PLC, Germany's Lufthansa AG and South Korea's Asiana Airlines Inc.

(which includes the base fare and the fuel surcharge) to be charged for flights between the U.S. and Korea;

    b.    Agreed during such meetings, conversations and communications, on one or both components of the passenger airline ticket prices, namely the base fare and the fuel surcharge, to charge on flights between the U.S. and Korea; and

    c.    Levying passenger airline ticket prices on flights between the U.S. and Korea in accordance with the unlawful agreements they agreed upon

23. As a result of these fraudulent and unlawful activities, Plaintiff and the members of the Class paid artificially high prices for passenger airline tickets from the U.S. to Korea.

24. Plaintiff and others similarly situated were damaged because passenger airline ticket prices from the U.S. to Korea were not determined by market forces, but instead by the Defendant's and its co-conspirators' illicit manipulative activities as alleged herein.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class:

> All persons and entities (excluding governmental entities, the Court and its staff, Defendant, Defendant's co-conspirators, and Defendant and its co-conspirators' predecessors, subsidiaries, affiliates, and business partners) who purchased passenger air transportation that included at least one flight segment between the United States and the Republic of Korea from Defendant, Defendant's co-conspirators, or any predecessor, subsidiary, affiliate or business partner of Defendants, or their co-conspirators, at any time during the period from January 1, 2000 to July 16, 2006 ("Class Period").

26. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that at least thousands of Class members purchased passenger airline tickets from Defendant for travel between the U.S. and Korea during the Class Period.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class. These common questions of law and fact include, without limitations:

    a.    Whether Defendant engaged in a combination or conspiracy with its co-conspirators to fix, raise, maintain, and/or stabilize the prices of passengerairline tickets, including the prices of fuel surcharges and other charges on passenger airline transportation;

    b.    Whether Defendant violated Section 1 of the Sherman Act;

    c.    Whether Defendant violated the Clayton Act;

    d.    The identities of the co-conspirators;

    e.    The duration of the conspiracy;

    f.    Whether the conduct of Defendant caused prices of passenger airline tickets to be artificially inflated to non-competitive levels; and

    g.    Whether Plaintiff and other members of the Class were injured by the conduct of the Defendant and, if so, the proper measure of damages.

28.    Plaintiff's claim is typical of the claims of the members of the Class. Plaintiff and all members of the Class sustained injuries and damages arising out of Defendant's common course of conduct in violation of law as complained of herein. The injuries and damages of each member of the Class were directly caused by Defendant's wrongful conduct in violation of law as alleged herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative of the Class and has no interests that are adverse to the interests of absent Class members. Plaintiff has retained counsel who has substantial experience and success in the prosecution of complex class action litigation, including antitrust litigation.

30.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  court system of adjudication of such individualized litigation would be substantial. The
2  prosecution of separate actions by individual members of the Class would create a risk of
3  inconsistent or varying adjudications, establishing incompatible standards of conduct for
4  Defendant.

5      31.    Plaintiff is unaware of any difficulties that are likely to be encountered in the
6  management of this action that would preclude its maintenance as a class action.

## FRAUDULENT CONCEALMENT

8      32.    By its very nature the unlawful activity, as alleged herein, that Defendant and its
9  co-conspirators engaged in was self-concealing. Defendant and its co-conspirators, *inter alia*,
10 participated in a conspiracy with each other to suppress and eliminate competition by fixing the
11 retail and/or wholesale prices of passenger airline tickets from the U.S. to Korea.

12     33.    Plaintiff and members of the Class had no knowledge of the unlawful conduct
13 alleged in this Complaint, or of any facts that could or would have led to the discovery thereof,
14 until it became public. The first public reports of any government action relating to Defendant
15 and its co-conspirators unlawful conduct occurred on or about August 1, 2007, when the DOJ
16 filed criminal antitrust proceedings in the U.S. District Court of the District of Columbia[3], and
17 Defendant Korean Air plead guilty to those charges.

18     34.    Because the Defendant and its co-conspirators employed acts and techniques that
19 were calculated to wrongfully conceal the existence of such illegal conduct, Plaintiff and the
20 Class could not have discovered the existence of this unlawful conduct any earlier than its public
21 disclosure in August 2007.

22     35.    Due to Defendant and its co-conspirators' fraudulent concealment, any applicable
23 statute of limitations affecting or limiting the rights of action by Plaintiff or members of the
24 Class has been tolled during the period of such fraudulent concealment.

25 ///
26 ///

---

[3] United States of America v. Korean Air Lines Co., Ltd., 07-184-JDB (D.D.C.).

- 8 -
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT I

### PRICE FIXING IN VIOLATION OF THE SHERMAN ACT

### 15 U.S.C. § 1

36. Plaintiff incorporates by reference the preceding paragraphs 1 through 35 as if fully set forth herein.

37. Defendant and its co-conspirators' conduct and price-fixing conspiracy, as detailed herein, constitutes violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 4 of the Clayton Act.

38. Defendant and its co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices of air passenger fares for flights between the U.S. and Korea.

39. The acts committed by Defendant and its co-conspirators as alleged herein unlawfully restrained interstate and foreign trade and commerce and were against public policy.

40. Plaintiff and the Plaintiff Class were injured by reason of unlawful acts of Defendant and its co-conspirators as alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice by given to members of the Class;

B. That the combination and conspiracy alleged herein be adjudged and decreed to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C. That Plaintiff and the members of the Class be awarded damages with interest, in an amount to be determined at trial;

D. That Plaintiff and the members of the Class be awarded treble damages, in an amount to be determined at trial;

E. That Plaintiff and the members of the Class recover the actual costs in prosecuting this action, together with interest and reasonable attorneys' fees and costs;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

| | | |
|---|---|---|
|1| F. | That Defendant be permanently enjoined from continuing the unlawful combination and conspiracy alleged herein; and, |
|3| G. | That Plaintiff and the members of the Class be granted such other, further and different relief as this Court deems just and proper. |

Dated: November 14, 2007

KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP

*[signature: Ralph B. Kalfayan]*

Ralph B. Kalfayan, Esq.
David B. Zlotnick, Esq.
David M. Watson, Esq.
625 Broadway, Suite 635
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019

Dan Drachler, Esq.
ZWERLING, SCHACHTER & ZWERLING, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9636

Robert Schachter, Esq.
Justin M. Tarshis, Esq.
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue, 32nd Floor
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969

Ali Oromchian, Esq.
ATTORNEY AT LAW
2603 Camino Ramon, Suite 200
San Ramon, CA 94583
Telephone: (925) 242-2511
Facsimile: (925) 884-1725

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL